In the Matter of the **LOS ANGELES COUNTY PIONEER SOCIETY,** a corporation, Debtor.

No. 14478.

United States Court of Appeals
Ninth Circuit.

Nov. 26, 1954.

Morris Lavine, in pro. per., and Guy Richards Crump, Los Angeles, Cal., for appellant.

Jerry Geisler, William Strong, Beverly Hills, Cal., amicus curiae of the Criminal Courts Bar Ass'n (on behalf of appellant).

Walter T. Shatford II, Temple City, Cal., Donald O. Krag, Alhambra, Cal., amicus curiae of San Gabriel Valley Bar Ass'n (on behalf of appellant).

Laughlin E. Waters, U. S. Atty., Louis Lee Abbott, Robert K. Grean, James R. Dooley, Asst. U. S. Attys., Los Angeles, Cal., for United States Dist. Court, S. D. California.

Augustus F. Mack, Jr., Los Angeles, Cal., attorney appointed by Los Angeles Bar Ass'n to assist the Court.

Before DENMAN, Chief Judge, and ORR and CHAMBERS, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from an order of the District Court for the Southern District of California made in the above proceeding, permanently disbarring appellant from practicing in that court. Also before the court is a motion to strike from the record an opinion, filed after the notice of appeal was filed.

A. *A federal court is without jurisdiction to disbar an attorney for a contempt not committed in or near a hearing then being conducted, where due process is denied him by failing to give him notice that his disbarment is being considered or by failing to give him an opportunity to prepare and present a defense.*

In the proceeding below appellant obtained for his client, the Los Angeles County Pioneer Society, hereafter Pioneer, and against the Historical Society of Southern California, hereafter Historical, a temporary restraining order restraining until the further order of the court, any action by the Superior Court of Los Angeles County in the case then entitled "In the Matter of the Dissolution and Winding Up of the Los Angeles County Pioneer Society, a Corporation." In that Superior Court case a proceeding was pending for the distribution of certain funds under the control of Historical, in which Pioneer, in its bankruptcy proceeding, claimed an interest. The temporary restraining order was granted on July 26, 1954, by the District Court, District Judge Harrison acting.

On July 30, 1954, the District Court, sua sponte, Judge Mathes acting, proceeded to hold a session *in its Pioneer bankruptcy proceeding.* The court then took judicial notice of a decision of the California Supreme Court which it so construed that it required a setting aside of the order of the District Court of July 26th so restraining the Los Angeles Superior Court. The first intimation the appellant had that the District Court was considering anything other than the setting aside of the restraining order came at the end of the session. Then after a finding by the court that appellant committed a fraud on the court by procuring the restraining order, and the reading of an order of disbarment, *already prepared by the court,* the record concludes:

"The Court: Mr. Clerk, here is the order, and you will enter it forthwith, immediately.

"The Clerk: Yes, your Honor.

"Mr. Lavine: If your Honor Please, ——

"The Court: The court will adjourn."

This is not a case where the contempt was in the proceeding in which it was adjudicated. On the question whether the district court lacked jurisdiction to proceed to render the judgment of disbarment, it is necessary to show that appellant was deprived of his property in his right to practice by conduct amounting to a denial of a constitutional right such as due process of law.

Such lack of jurisdiction is held in Frank v. Mangum, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969, where the question, as here, was one of due process under the Fourteenth Amendment which covers that of the Fifth Amendment. The Court at pages 326–327 of 237 U.S., at page 587 of 35 S.Ct., stated: "It is therefore conceded by counsel for appellant that, in the present case, we may not review irregularities or erroneous rulings upon the trial, however serious, and that the writ of habeas corpus will lie only in case the judgment under which the prisoner is detained is shown *to be absolutely void for want of jurisdiction in the court that pronounced it,* either because such jurisdiction was absent at the beginning, or because it was lost in the course of the proceedings. And since no question is made respecting the original jurisdiction of the trial court, the contention is and must be that by the conditions that surrounded the trial, and the absence of defendant when the verdict was rendered, the *court was deprived of jurisdiction* to receive the verdict and pronounce the sentence." (Emphasis supplied.)

This was followed by Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461, respecting a violation of the Sixth Amendment. There the Court, relying on Frank v. Mangum, stated at page 468 of 304 U.S., at page 1024 of 58 S.Ct.: "If the accused, however, is not represented by counsel and has not competently and intelligently waived his constitutional right, the Sixth Amendment stands as a jurisdictional bar to a valid conviction and sentence depriving him of his life or his liberty. A court's jurisdiction at the beginning of trial may be lost 'in the course of the proceedings' due to failure to complete the court—as the Sixth Amendment requires—by providing counsel for an accused who is unable to obtain counsel, who has not intelligently waived this constitutional guaranty, and whose life or liberty is at stake. * * *"

Appellant's contention is that such a proceeding without notice of its purpose and with its failure to afford an opportunity to oppose the disbarment, *contained in the already prepared order therefor,* denies him the due process of the Fifth Amendment in depriving him of his property in the right to practice law in the district.

The lengthy brief of the District Court can be summarized as contending that the conduct of the appellant was so certainly a fraud on Judge Harrison on July 26th that on July 30th the court, with Judge Mathes presiding, was entitled to impose the extreme penalty of disbarment, without opportunity to offer any possible defenses or extenuating circumstances.

As to there being a violation of the Fifth Amendment, that is determined by this court of appeals in a disbarment case practically identical with that before the District Court, United States v. Hicks, 9 Cir., 37 F.2d 289.

In the Hicks case it appears at page 292 that, as here, one Raine Ewell, Hicks' attorney, was disbarred in a proceeding for a different purpose, the settlement of a bill of exceptions. The debarment, permanently from practice, was for what the trial court regarded as libelous statements concerning another attorney made in a notice of substitution of Newell for the other attorney in the settlement of the exceptions. Newell assumed properly, this court held, that the only question before the court was the settlement of the bill but at the end of the proceeding he

learned the court had been considering his disbarment in the following colloquy:

"The Court: 'Now, you understand that you are on trial here, do you not?'

"Mr. Ewell: 'No, I don't, Your Honor.'

"The Court: 'Then you had better wake up and take notice. You are on trial here before me.'

"Mr. Ewell: 'This is the first intimation I have had that I was on trial.'

"The Court: 'You know it now then.' "

This was followed by the following statement of the District Court:

" 'Your conduct and the conduct of every attorney of this court is under continual observance of this court and may be investigated and passed upon by this court at any time without formal charges, or any charges, being placed against an attorney.' "

Of the above we stated as follows:

"Without further discussing the facts, we are clearly of the opinion that until near the close of the hearing appellant had no thought that personally he was on trial for disbarment or contempt or for any other cause or purpose; and, further, that the views expressed in the foregoing comment are erroneous. It may be that an attorney can be summarily disbarred without a hearing for misconduct committed in the presence of the court. See, however, Bradley v. Fisher, 13 Wall. 335, 355, 80 U.S. 335, 355, 20 L.Ed. 646. But that question we need not decide, for no such case is here presented. It may also be admitted that the rules of practice in a disbarment proceeding are more flexible than those prevailing in criminal cases, and that a formal charge is not indispensable. Randall v. Brigham, 7 Wall. 523, 74 U.S. 523, 19 L.Ed. 285; Thatcher v. U. S., 6 Cir., 212 F. 801. But that is not to say that an attorney can be disbarred without a charge in some form. No case has been brought to our attention supporting such a view, and it would seem to be out of harmony with fundamental conceptions of justice. In the two cases cited, supra, upon which the District Attorney relies, it is clearly recognized as indispensable that the subject of such a proceeding be advised of the proposed action and of the basis therefor, and that he have his 'day in court.' In other words, he must in advance be informed of the purpose of the proceeding and of the grounds therefor, and be afforded a fair opportunity to interrogate the witnesses testifying against him and to produce evidence in refutation or rebuttal. * * * See also Ex parte Bradley, 7 Wall. 364, 74 U.S. 364, 19 L.Ed. 214; Bradley v. Fisher, 13 Wall. 335, 354, 80 U.S. 335, 354, 20 L.Ed. 646; Ex parte Robinson, 19 Wall. 505, 512, 86 U.S. 505, 512, 22 L.Ed. 205."

Likewise is the decision in the early case of Ex parte Garland, 4 Wall. 333, 71 U.S. 333, 18 L.Ed. 366. There the Supreme Court, 4 Wall. at page 378, 71 U.S. at page 378, 18 L.Ed. 366, stated of the office of attorney:

"They hold their office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court and after opportunity to be heard has been afforded. Ex parte Heyfron, 7 How., Miss., 127; Fletcher v. Daingerfield, 20 Cal. 427, 430."

In Ex parte Robinson, 19 Wall. 505, 86 U.S. 505, 22 L.Ed. 205, the Supreme Court first repeats the above statement of Ex parte Garland and continues concerning disbarments for conduct not in the presence of the court:

"Before a judgment disbarring an attorney is rendered, he should have notice of the grounds of complaint against him and ample opportunity

of explanation and defense. This is a rule of natural justice and should be equally followed when proceeedings are taken to deprive him of his right to practice his profession, as when they are taken to reach his real or personal property. * * * The principle that there must be citation before hearing, and hearing or opportunity of being heard before judgment, is essential to the security of all private rights. Without its observance no one would be safe from oppression wherever power may be lodged."

This was followed by Cooke v. United States, 267 U.S. 517, 45 S.Ct. 390, 69 L.Ed. 767, a case also interesting for its requirement that a different judge should entertain the disbarment proceeding. There the Court, in reversing a conviction for contempt, states inter alia at page 537 of 267 U.S., at page 395 of 45 S.Ct. that even if there be an admission of the contempt, the court must permit a showing in mitigation of the penalty to be imposed:

"Due process of law, therefore, in the prosecution of contempt, except of that committed in open court, requires that the accused should be advised of the charges and have a reasonable opportunity to meet them by way of defense or explanation. We think this includes the assistance of counsel, if requested, and the right to call witnesses to give testimony, relevant either to the issue of complete exculpation or in extenuation of the offense and in mitigation of the penalty to be imposed."

It was after these cases that the Supreme Court held in Johnson v. Zerbst following Frank v. Mangum, both supra, that the court is without jurisdiction to render a judgment where the litigant is denied due process or other constitutional right. We hold there was such a denial of due process and that the district court lacked jurisdiction to render the judgment of disbarment.

Reliance is placed in the brief of the appellee on Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C., under which appellee claims it had the jurisdiction so summarily to disbar appellant. The pertinent portion of that rule reads:

"Every pleading of a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. * * * The signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay. If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false and the action may proceed as though the pleading had not been served. For a wilful violation of this rule an attorney may be subjected to *appropriate* disciplinary action. Similar action may be taken if scandalous or indecent matter is inserted." (Emphasis supplied.)

Nothing in this rule purports to say that it is due process to disbar a lawyer for a contempt, not committed in or near the presence of the judge trying a case, without notice of the charge or an opportunity to be heard. The rules of civil procedure are prescribed by the Supreme Court, 28 U.S.C. § 2072. It is irrational to assume that the Supreme Court, in prescribing Rule 11, for *"appropriate disciplinary action"* intended to create such a jeopardy for an attorney and thereby in effect overrule its decisions cited above.

■ B. *The Motion to Strike the Opinion of the District Court Should be Denied.*

Judge Mathes filed an opinion in the bankruptcy proceeding on August 31, 1954, a month after the appeal to this court on the ground of absence of jurisdiction to order the disbarment of La-

vine. Appellant moves to strike it from the record below. What occurred in the court below after the date of the appeal is not within our jurisdiction to consider on such a motion. Appellant's motion is ordered denied.

The District Court's order of disbarment is reversed and that court ordered to set aside that order.[1]

CHAMBERS, Circuit Judge (concurring).

An examination of the record and of the opinion of the trial judge in this case, In the Matter of Lavine, D.C., 126 F. Supp. 39, will indicate that the respondent had notice that he was in trouble, but he didn't have notice, I take it, that the penalty was to be so severe.

Most of the cases on "off the handle" disbarment carefully recognize that there is an inherent power to disbar an attorney in a proper case, without notice or any other formality, but the cases neglect to describe a "proper case." Randall v. Brigham, 7 Wall. 523, 74 U.S. 523, 19 L.Ed. 285; In re Claiborne, 1 Cir., 119 F.2d 647. Venturing into the unknown, I suggest that if Morris Lavine had come into court with six-guns at his side and with fingers on triggers demanded that a district judge sign an order, the district judge would have power then and there without formality to disbar Mr. Lavine. And I believe if such a thing had happened here that my associates would agree.

But here it is charged, I assume, that not even yesterday, but last week, Mr. Lavine did not make a fair disclosure to Judge Harrison, the district judge who signed the orders which were vacated by Judge Mathes. In such a case, a sense of fair play, which ordinarily is due process, requires notice of the charges, a chance to prepare for defense and, if found guilty, an opportunity to make representations in mitigation. I don't think we need to talk of "jurisdiction."

I am in complete accord with that portion of the majority's opinion which commends for consideration of the United States District Court for the Southern District of California the Oregon rule on discipline of attorneys.

[1]. It is suggested that the District Court consider the making of some such rule concerning disbarments as Rule I of the United States District Court for the District of Oregon, with its provisions for the filing of a complaint, service of notice and a hearing.